1  Dana M. Douglas  (SBN 220053)
   Attorney at Law
2  11024 Balboa Blvd., No. 431
   Granada Hills, CA 91344
3  MAILING ADDRESS:
   4712 Admiralty Way #1001
4  Marina del Rey, CA  90292
   Telephone: 818-360-8295
5  Facsimile: 213-270-9456
   *dana@danamdouglaslaw.com*

6
   Attorney for Plaintiff
7  Satish Shetty

8               UNITED STATES BANKRUPTCY COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10             SAN FERNANDO VALLEY DIVISION

11  In re:                                    )   Case No. 1:14-bk-10668-MB
                                              )
12    REMON YOUNANY,                          )
                                              )   Chapter 7
13             Debtor.                        )
                                              )
14  --------------------------------------    )   Adversary No. 1:14-ap-01098-MB
                                              )
15                                            )
    Satish Shetty,                            )
16                                            )   **PLAINTIFF'S TRIAL BRIEF**
               Plaintiff,                     )
17                                            )
     v.                                       )   ***Trial:***
18                                            )   Date:      April 22, 2016
                                              )   Time:      10:00 am
19  Jasmin Kachtourian                        )   Location:  Courtroom 303
                                              )              21041 Burbank Blvd.
20  and                                       )              Woodland Hills, CA  91367
                                              )
21  Remon Younany,                            )
                                              )
22             Defendant.                     )
                                              )
23                                            )
                                              )
24  --------------------------------------    )

25         Satish Shetty (the "Plaintiff" or "Shetty") by and through his undersigned

26  counsel, submits the following Trial Brief in support of his claims against Debtors

27  Remon Younany and Jasmin Kachtourian (individually "Younany" o r

28

                    **ORDER ON STIPULATION FOR TESTIMONY BY DECLARATION**



1    "Katchtourian," jointly "Defendants" or "Debtors").   For the reasons set

2    forth below, Shetty respectfully requests that a judgment be entered in Shetty's favor,

3    declaring that the debts Defendants owe to Shetty, as the assignee of creditors Gary

4    Yannalfo, Ali Kavehpour and Azi Kavehpour, are excepted from discharge pursuant

5    to Sections 523(a)(2)(A) and/or 523(a)(6) of the Bankruptcy Code.

6                            **I.    <u>SUMMARY OF FACTS</u>**

7    This Court need look no further than the documents before it to find the facts that will

8    support Shetty's claims.   The essential material facts have been stipulated to in the

9    Pre-Trial Stipulation [DN 63] (the "Pre-Trial Stipulation").

10           **A.    The Claim Assigned by Gary Yannalfo**

11   Beginning on or about January 18, 2013, and continuing through May 17, 2013,

12   Claimant Yannalfo loaned Younany $87,000 in cash in exchange for four promissory

13   notes that he believed conveyed to him an investment in Younany's profitable business

14   which operated as an ARCO-branded gas station with an AM/PM MiniMart convenience

15   store ("Defendants' Business").

16           **B.    The Claim(s) Assigned by Avi Kavahpour & Ali Kavahpour**

17           1.    Beginning on or about February 1, 2012, and continuing through

18   July 10, 2012, Defendants entered into an agreement with Claimants Ali and Azi

19   Kavehpour (jointly, the "Kavehpours") selling them interest(s) in Defendants' Business.

20           2.    The Kavehpours paid $183,000 for their interest(s) in Defendants'

21   Business.

22           Defendants do not dispute these facts; indeed, they stipulated, referring

23   to exact recitation of the facts above: these "facts are admitted and require no proof."

24           **C.    Younany Signed Promissory Notes to Yannalfo that He Knew, or
               Should Have Known, He Did Not Intend to, or Could Not, Pay**

25

26           Younany's intention not to pay, or knowledge he could not and would not

27   pay, can be inferred from the fact that he obtained the funds knowing Yannalfo

28



1  believed he was buying an interest in Younany's profitable business when, in fact,

2  Younany neither owned the business nor was it profitable.

3  **D.    Younany & Katchtourian Entered into Transactions with Avi**
   **Kavehpour and Azi Kavehpour Without Informing Them of the True**
4  **Condition of Defendants' Business and Knowing they Could Not, or**
   **Would Not, Perform as Agreed**
5

6  Younany and Kachtourian negotiated with the Kavehpours from February

7  1, 2012 to July 10, 2012, to sell them an interest in Defendants' Business while

8  simultaneously under threat of legal action by Wilshire State Bank which did, in fact,

9  file suit against Defendants on May 12, 2012, while Defendants continued to negotiate

10  with the Kavehpours and collect payments tendered toward their purchase of an

11  interest in the business.

12  II.    **LEGAL ANALYSIS**

13  **A.    Summary**

14  Shetty seeks to except from discharge the debt(s) Younany and

15  Kachtourian owe to him as assignee of Yannalfo and the Kavehpours on two grounds.

16  First, the relief is sought based on Younany's fraudulent conduct in signing

17  the Promissory Notes and taking money from Yannalfo to purchase an interest in an

18  allegedly "profitable" business that was not profitable and which Younany did not own

19  and could not, therefore, transfer any interest ; and Younany and Kachtourian's fraud

20  and misrepresentation(s) to the Kavehpours in offering to them and contracting with

21  them to sell interest(s) in the Defendants' (profitable) Business that they contractually

22  could not sell, and did not intend to sell, and which was not profitable and at risk of

23  being ejected from the premises it occupied.

24  "Congress created the exception [to dischargeability of debts under §

25  523(a)(2)(A)] to prevent a debtor from retaining the benefits of property obtained

26  by fraudulent means and to ensure that the relief intended for honest debtors does

27  not go to dishonest debtors." *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222

28

DANA M. DOUGLAS
Attorney At Law

1   (9th Cir. 2010) (citation omitted).  In describing the reach and purpose of the

2   exception, the Supreme Court has remarked that "it is 'unlikely that Congress . . .

3   would have favored the interest in giving perpetrators of fraud a fresh start over the

4   interest in protecting victims of fraud.'" *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998)

5   (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Here, Defendants' fraudulent

6   conduct in signing the promissory notes and taking Yannalfo's

7   money and in signing the Stock Purchase Agreement with the Kavehpours

8   should prevent their debt to Shetty as the assignee of Yannalfo and the Kavehpours

9   from being discharged.

10          <u>Second,</u> Shetty seeks to except from discharge the debt Younany and

11  Kachtourian owe to Shetty as assignee of Yannalfo and the Kavehpours as a result of

12  their willful and malicious injury to Yannalfo and the Kavehpours—specifically,

13  engaging in agreements to sell interests in Defendants' Business that they knew they

14  could not, and would not, transfer to Yannalfo or the Kavehpours.

15

16          **B.      Younany and Kachtourian's Fraudulent Conduct Renders Their Debt Non-dischargeable Under Section 523(a)(2)(A)**

17          Defendants' debt to Shetty should be excepted from their discharge

18  based on Younany's fraudulent conduct in signing the Promissory Notes to Yannalfo

19  and Younany and Kachtourian's fraudulent conduct in entering into the Stock

20  Purchase Agreement to sell interest(s) in Defendants' Business to the Kavehpours

21  while not sharing any information about the condition of the business, their inability

22  to transfer interest(s) in the Business or, alternatively, to repay the loans.

23  A debt "for money, property, services…to the extent obtained by - (A) false pretenses, a

24  false representation, or actual fraud" may not be discharged in bankruptcy. 11

25  U.S.C. § 523(a)(2)(A).

26          To prevail on a claim under section 523(a) (2) (A), a creditor must

27  demonstrate five elements:

28

DANA M. DOUGLAS
Attorney At Law

1    (1)    misrepresentation, fraudulent omission or deceptive conduct by

2         the debtor;

3    (2)    knowledge of the falsity or deceptiveness of his statement or

4         conduct;

5    (3)    an intent to deceive;

6    (4)    justifiable reliance by the creditor on the debtor's statement or

7         conduct; and

8    (5)    damage to the creditor proximately caused by its reliance on the

9         debtor's statement or conduct.

10   *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1050 (9th Cir. 2014) (citations omitted)

11   (affirming bankruptcy court's non-dischargeabilty finding under section 523(a)(2)(A)

12   where debtor's misrepresentations concerning his ability to perform under a building

13   contract were made with an intent to deceive).   "The creditor bears the burden of

14   proof to establish all five of these elements by a preponderance of the evidence." *Id.*

15   (citations omitted).  The facts in this case, including those to which Defendants

16   expressly stipulated and those which the Court may infer, support all five of the

17   elements.

18        **(1)    Misreresentation: Fraudulent Omission Or Deceptive Conduct
19             By Defendants**

20        Defendants stipulated to the fact that Yannalfo loaned Younany $87,000

21   in cash in exchange for four promissory notes (signed by Younany) that he believed

22   conveyed to him an investment in Younany's profitable business which operated as an

23   ARCO-branded gas station with an AM/PM MiniMart convenience store ("Defendants'

24   Business"). (Pre-Trial Stipulation ¶A(1), page 2.)  But Younany did not own the

25   business interest(s) he purported to sell to Yannalfo. Younany's omission

26   of that material fact and/or his misrepresentation that he was the owner of the

27   business and that it was profitable constitutes an actionable misrepresentation.

28   Likewise, Defendants stipulated to the fact that (a) beginning on or about February 1,

1    2012, and continuing through July 10, 2012, Defendants entered into an agreement

2    with Claimants Ali and Azi Kavehpour (jointly, the "Kavehpours") selling them interest(s)

3    in Defendants' Business and (b) the Kavehpours paid $183,000 for their interest(s) in

4    Defendants' Business.  However, Defendants were contractually prohibited from selling

5    or transferring any interest in the ARCO licenses, they did not transfer any interest in

6    the Business as promised to the Kavehpours and at the same time that they were

7    negotiating with the Kavehpours and accepting payments from them Defendants were

8    also contending with Wilshire State Bank which, in May, 2012, sued Defendants and

9    their Business.

10            In *Deitz v. Ford (In re Deitz),* the "bankruptcy court found and

11   concluded that [the Debtor] knowingly made false representations to the [creditors]

12   that he was a licensed contractor" and "that he misrepresented that he would

13   complete the construction of the home according to ADA, VA and local building code

14   standards."  760 F.3d 1038, 1042 (9th Cir.2014) (affirming bankruptcy court's

15   nondischargability finding under section 523(a)(2)(A)). Just as the Debtor in *Deitz*

16   "misrepresented to the [creditors] that he would complete the construction on the

17   home according to ADA, VA and county standards,"(*Id.* at 1051) here, Defendants

18   misrepresented that they would convey interest(s) in their Business.  Such a

19   misrepresentation satisfies this requirement under section 523(a)(2)(A).

20            In *Arciniega v. Clark (In re Arciniega),* the B.A.P. affirmed the lower

21   court's finding that "the language of the Settlement Agreement was clear and

22   unambiguous and that [debtor] had represented she would pay off the VA loan or

23   remove [the cosignor's] name from it," that such representation was false, and thus the

24   first element of § 523(a)(2)(A) was satisfied.  2016 Bankr. LEXIS 343, *17 (B.A.P. 9th Cir.

25   Feb. 3, 2016).

26            **(a)        Misrepresentations**

27            Defendants' misrepresentations of performance in the

28   Stock Purchase Agreement with the Kavehpours are similarly



1  unambiguous.  Their representation that they would convey interest(s) in Defendants'

2  Business was false, and satisfies this requirement under section 523(a)(2)(A).

3                    **(b)       Fraudulent Omission**

4                    Also, "bankruptcy courts have conceded that a debtor's

5  silence or omission regarding a material fact can constitute a false representation which

6  is actionable under § 523(a)(2)(A)." *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87

7  F.3d 1082, 1089 (9th Cir. 1996) (citation omitted).  "The nondisclosure of a material

8  fact in the face of a duty to disclose constitutes a fraudulent representation under §

9  523(a)(2)(A)." *Parks v. Angelus Block Co. (In re Parks)*, 2014 U.S. App. LEXIS 10583,

10  *3-4 (9th Cir. June 6, 2014) (citing *Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1323-24

11  (9th Cir. 1996)).

12  Younany makes no representation that he informed Yannalfo that Younany did not

13  own the business and that the payments were personal loans to him for which

14  Yannalfo received no interest in the Business.  Similarly, Defendants make no

15  representation that they informed the Kavehpours that, despite the terms of the Stock

16  Purchase Agreement, they would not could not and would not transfer interests in the

17  Business nor that they informed the Kavehpours of the dire financial condition of the

18  business.  These constitute a fraudulent omissions which are actionable under §

19  523(a)(2)(A).

20              **(2)      Defendants' Knowledge of The Falsity or Deceptiveness of
                         Their Statements or Conduct**

21

22              A "promise made with a positive intent not to perform or without a

23  present intent to perform  satisfies  §  523(a)(2)(A)."    *In re Rubin*, 875  F.2d  755,

      759  (9th  Cir.  1989). "**Additionally, the promise can be found fraudulent where**

24  **the promisor knew or should have known of his prospective inability to perform**."

25  *Arciniega v. Clark (In re Arciniega)*, 2016 Bankr. LEXIS 343, *22 (B.A.P. 9th Cir. Feb.

26  3, 2016) (internal quotation marks and citation omitted) (finding that based on her

27  dire  financial  condition  at  the  time  and  her  sophistication  level  she  knew  or  should

28

1  have known that she would be unable to perform under the agreement). "Opinions as to

2  future events which the declarant does not, in fact, hold or declarations made with

3  reckless indifference for the truth may be found to be fraudulent." *In re Rubin*, 875

4  F.2d 755, 759 (9th Cir. 1989).

5  There is no imagineable scenario wherein Younany might not have known that he did

6  not own the Business and could not convey an interest to Yannalfo.  Likewise if, in fact,

7  Defendants somehow did not know they could not transfer the interest(s) in the

8  Business that Defendants "sold" to the Kavehpours pursuant to the Stock Purchase

9  Agreement, they neither informed they make no representation that they were surprised

10 to learn this or in any way attempted to correct the situation.  Accordingly, it appears

11 more likely than not that these were promises "made with a positive intent not to

12 perform" and/or a promise made "without a present intent to perform," satisfying this

13 second element of § 523(a)(2)(A).

14              **(3)    <u>Intent To Deceive</u>**

15              Because a debtor "is unlikely to testify directly that his intent

16 was fraudulent, [the bankruptcy court] may deduce fraudulent intent from all the facts

17 and circumstances of a case." *Devers v. Bank of Sheridan, Montana (In re Devers)*,

18 759 F.2d 751, 754 (9th Cir. 1985). "Fraudulent intent may be established by

19 circumstantial evidence, or by inferences drawn from a course of conduct." *Id.* at 753-

20 54.

21              The Court may find fraudulent intent where there has been a

22 pattern of falsity or from a debtor's reckless indifference to or disregard for the truth

23 of a representation.  *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R.

24 163, 174 (9th Cir. BAP 2007) (discussing intent to deceive within the context of §

25 727(a)).  *See also Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir.

26 1989)("[O]pinions as to future events which the declarant does not, in fact, hold or

27 declarations made with reckless indifference for the truth may be found to be

28 fraudulent").  Within the Ninth Circuit, the phrase "reckless indifference to his actual

DANA M. DOUGLAS
Attorney At Law

1  circumstances" is used interchangeably with the phrase "reckless disregard for the truth

2  of a representation." *Advanta Nat'l Bank v. Kong (In re Kong)*, 239 B.R. 815, 826 (9th

3  Cir.1999) (citations omitted).

4            In *Deitz v. Ford (In re Deitz)*, the Ninth Circuit affirmed the

5  bankruptcy court's finding that the Debtor's "misrepresentations were intentional and

6  designed specifically to deceive and induce [the creditors] for the sole purpose of being

7  retained to build Plaintiff's home and profit thereby." 760 F.3d 1038, 1050 (9th Cir.

8  2014).

9            In *Arciniega v. Clark (In re Arciniega)*, the B.A.P. affirmed the

10  bankruptcy court's finding of fraudulent intent when "it inferred [debtor's] fraudulent

11  intent from evidence that she knew of the impossibility of what she had

12  promised...." *Arciniega v. Clark (In re Arciniega)*, 2016 Bankr. LEXIS 343, *24 (B.A.P.

13  9th Cir. Feb. 3, 2016).

14            As discussed above, Defendants make no representation that they

15  did not know they could not convey the interests allegedly sold to Yannalfo or the

16  Kavehpours leaving us to conclude that despite knowing of their inability to perform,

17  Defendants nevertheless made the representations for the sole purpose of inducing

18  Yannalfo and the Kavehpours to tender the purchase funds. It is reasonable to find that

19  Defendants intended to deceive Yannalfo and the Kavehpours.

20            **(4)    <u>Justifiable Reliance on Defendants' Statements or Conduct</u>**

21            Defendants stipulated to this element when they

22  agreed Yannalfo "believed [the promissory notes] conveyed to him an

23  investment" (Pre-Trial Stipulation ¶ A(1), page 2) and that "[t]he Kavehpours paid

24  $183,000 for their interest(s) in Defendants' Business" (Pre-Trial Stipulation ¶ A(2)(b),

25  page 2). These statements clearly demonstrate that Yannalfo and the Kavehpours relied

26  on Defendants' representations without any suggestion the reliance was not reasonable.

27  //

28  //



**(5)**     **Damage To Yannalfo and the Kavehpours Proximately Caused by Reliance on Defendants' Statement or Conduct**

As noted above, Defendants stipulated to this element when they agreed Yannalfo " believed [the promissory notes] conveyed to him an investment" (Pre-Trial Stipulation ¶ A(1), page 2) and that "[t]he Kavehpours paid $183,000 for their interest(s) in Defendants' Business" (Pre-Trial Stipulation ¶ A(2)(b), page 2). These statements clearly demonstrate that Yannalfo and the Kavehpours relied on Defendants' representations and, therefore, the loss of the money given to Defendants to purchase interest in Defendants' Business is proximately caused by their reliance on Defendants' representations.

**(D)**     **Defendants' Willful and Malicious Conduct Renders the Debt Non-dischargeable Under § 523**

Section 523(a)(6) prevents discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). A willful and malicious injury under Section 523(a)(6) requires proof of a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Sheikhpour willfully and maliciously engaged in in conduct designed to extinguish Chevron's lien on the Residence, while preserving rights in the Residence for himself.

**(1)**     **Willful Injury**

In this Circuit, for § 523(a)(6)'s willful injury requirement the plaintiff must show either that:

(a)     The debtor had a subjective motive to inflict the injury or

(2)     The debtor believed that injury was substantially certain to occur as a result of his conduct.

*In re Su*, 290 F.3d 1140, 1143 (9th Cir. 2002).



1    Non-dischargeability under Section 523(a)(6) is limited "to those

2    situations in which the debtor possesses subjective intent to cause harm **or knowledge**

3    **that harm is substantially certain to result from his actions.**" *In re Su,* 290 F.3d at

4    1146 (emph. added).

5    Defendants knew they would not convey interest(s) in their

6    Business to Yannalfo and the Kavehpours and that the dire financial condition of the

7    business most certainly meant that neither Yannalfo nor the Kavehpours was likely to

8    be repaid.  It can be inferred that they had **knowledge that harm [was] substantially**

9    **certain to result from their actions**.

10    **(2)** **Malicious Injury**

11    In this Circuit, a "malicious injury" under Section 523(a)(6)

12    involves:

13    (1)  a wrongful act;

14    (2)  done intentionally;

15    (3)  which necessarily causes injury; and

16    (4)  is done without just cause or excuse.

17    *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (internal

18    citations omitted).

19    Defendant's wrongful act is in inducing Yannalfo and the

20    Kavehpours to give them money to obtain an interest in Defendants' Business while not

21    conveying an interest in Defendants' Business and, instead, converting those funds to

22    their own uses.  This deprived Yannalfo and the Kavehpours of any security interest

23    they should have received by virtue of their investment(s) in Defendants' Business.

24    "[I]injury to property includes the conversion of property subject to a creditor's security

25    interest."      *In   re   Riso,*   978   F.2d   1151,   1154   (9th   Cir.   1992).      *See*

26    *also Huntington Nat'l Bank v. Marrufo (In re Marrufo),* 2010 Bankr. LEXIS 1608, *13

27    (Bankr. D. Ariz. May 11, 2010) (Debtor's scheme to deprive [creditor] its security

28

DANA M. DOUGLAS
Attorney At Law

1  interest was willful" and malicious, and therefore, the creditor was "entitled to a

2  determination that the debt [was] nondischargeable pursuant to § 523(a)(6)").

3  As set forth above, the act was done "intentionally," in that Defendants most certainly

4  knew that the harm to Yannalfo and the Kavehpours was substantially certain to

5  result from their actions—and indeed, the injury necessarily occurred, rendering

6  Yannalfo and the Kavehpours unsecured both in Defendants' bankruptcy and any

7  bankruptcy filed on behalf of Defendants' Business..

8                    "Maliciousness" may be implied from circumstances

9  surrounding the debtor's conduct, even without proof that the debtor acted with spite,

10  hatred or ill will toward the victim.  *In re Ormsby*, 591 F.3d 1207 (9th Cir. 2010).

11  Here, the facts to which Defendants have stipulated (as set forth above) provide ample

12  ground to support such an inference; there is no just cause or excuse for their conduct,

13  which was plainly designed to deprive Yannalfo and the Kavehpours of any security (or

14  other) interest in Defendants' Business.

15                            **III.    Conclusion**

16        For all the reasons set forth herein, Shetty respectfully requests that the Court

17  find in favor of Shetty, and enter a judgment denying Younany and Kachtourian a

18  discharge of Shetty's claim.

19  Date:  April 14, 2016                        /s/ Dana M. Douglas
                                                Dana M. Douglas
20                                              Attorney for Plaintiff
                                                Satish Shetty
21

22

23

24

25

26

27

28

1  Dana M. Douglas  (SBN 220053)
   Attorney at Law
2  11024 Balboa Blvd., No. 431
   Granada Hills, CA 91344
3  MAILING ADDRESS:
   4712 Admiralty Way #1001
4  Marina del Rey, CA  90292
   Telephone: 818-360-8295
5  Facsimile:  213-270-9456
   *dana@danamdouglaslaw.com*
6
   Attorney for Plaintiff
7  Satish Shetty

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9              SAN FERNANDO VALLEY DIVISION

10 In re:                                 )   Case No. 1:14-bk-10668-MB
                                          )
11 REMON YOUNANY,                         )
                                          )
12             Debtor.                    )   Chapter 7
                                          )
13 ---------------------------------------)
                                          )   Adversary No.  1:14-ap-01098-MB
14                                        )
                                          )
15 Satish Shetty,                         )
                                          )   **DECLARATION OF**
16             Plaintiff,                 )   **PLAINTIFF SATISH SHETTY**
                                          )
17    v.                                  )
                                          )
18 Jasmin Kachtourian                     )   **Trial Date:**
                                          )   Date:      April 22, 2016
19 and                                    )   Time:      10:00 am
                                          )   Courtroom: 303
20 Remon Younany,                         )              21041 Burbank Blvd.
                                          )              Woodland Hills, CA  91364
21                                        )
                                          )
22             Defendant.                 )
                                          )
23 ---------------------------------------)

24
       Plaintiff, SATISH SHETTY, declares as follows:
25
       1.      I am the plaintiff in this matter.  I have personal knowledge of the information
26
   below other than those stated on information and belief, which I believe to be true, and if called
27
   upon to do so, I could and would competently testify thereto under oath, in a court of law.
28

                    **DECLARATION OF PLAINTIFF SATISH SHETTY**

DANA M. DOUGLAS
Attorney At Law

1    2.    This declaration is my direct testimony in support of my complaint against

2 defendants Jasmin Kachtourian ("Kachtourian") and Remon Younany ("Younany") (individually

3 "Defendant" and, jointly, "Defendants").

4    3.    I own the claims of three parties who transacted business with Defendants: Ali

5 Kavehpour, Azi Kavehpour (the "Kavehpours") and Gary Yannalfo ("Yannalfo").

6    4.    All three parties invested in Defendants' business which was an ARCO-branded

7 gas station with an AM/PM Minimart located at 2124 Harbor Boulevard in Ventura 93001

8 ("Defendants' Business").

9    5.    I have known Azi Kavehpour for some years from various real estate transactions.

10    6.    After conducting an investigation regarding Defendants and Defendants' Business

11 and business practices, I purchased her claim and causes of action arising out of her investment in

12 Defendants' Business as I thought it might be possible to achieve some recovery thereon.

13    7.    Ms. Kavehpour told me her experience with Defendants' Business began with

14 purchases of gasoline at the station on Harbor Boulevard where she met Mr. Younany and he

15 talked to her about his business. Mr. Younany asked if she was interested in investing in his

16 business. The business was a very nice-looking ARCO station in a very good location on Harbor

17 Blvd. in Ventura.

18    8.    In furtherance of the agreement to invest in Defendants' Business Ms.

19 Kachtourian began working in the station as a cashier where I met her one evening as I was

20 investigating her claim(s).

21    9.    I received a fully-executed document entitled Irrevocable Offer and Stock Purchase

22 Agreement executed January 28, 2012, from Ms. Kavehpour in support of their claims against

23 Defendants and copies of checks totaling $183,000 that were tendered to Defendants and cashed

24 by them.

25    10.    I was introduced to Gary Yannalfo by Azi Kavehpour a short while after I had

26 determined to purchase the Kavehpours' claim(s) against Defendants. After meeting with him,

27 listening to his experience and examining his documents supporting his claim(s), I determined to

28 purchase his claim(s) and causes of action against Defendants.

DANA M. DOUGLAS
Attorney At Law

2
**DECLARATION OF PLAINTIFF SATISH SHETTY**

1        11.    When I met with Yannalfo he told me that he had begun to invest in Defendants'

2    Business via a series of promissory notes beginning on January 18, 2013, and continuing into

3    June, 2013, that were signed by Younany wherein Yannalfo was receiving interest only on the

4    notes; a body of principal was to be accruing toward a 25% partnership interest in Defendants'

5    Business.

6        12.    Like Kavehpour, Yannalfo was to perform some work in Defendants' Business

7    and, in so doing, Yannalfo observed that Defendants' Business was not solvent and thought he

8    should not continue to invest in it. Younany did not present a partnership interest agreement to

9    Yannalfo until approximately June 7, 2013, by which time Yannalfo had already discovered the

10    true condition of Defendants' Business and was unwilling to invest additional money.  Younany

11    stopped making interest payments after Yannalfo declined to tender additional funds toward the

12    investment.

13        13.    I received a series of promissory notes signed by Younany and an unsigned

14    partnership agreement from Yannalfo in support of his claim(s) against Defendants.

15        14.    I was surprised to observe that Younany began signing the promissory notes less

16    than 21 days before Defendants' Business filed a chapter 11 bankruptcy as Harbor Petroleum, Inc.,

17    on or about February 8, 2013, and continued to accept solicit and accept installments from

18    Yannalfo toward his "investment" in Defendants' Business for over three months after the Harbor

19    Petroleum, Inc., bankruptcy case was filed.

20        15.    After I determined to purchase the Kavehpours' and Yannalfo's claim(s) I

21    interviewed other parties associated with Defendants and Defendants' Business to learn more

22    about the claim(s) I had purchased and Defendants' Business.

23        16.    After I purchased the Kavehpours' and Yannalfo's claim(s) I contacted Defendants

24    through their various attorneys to try to resolve the claims.  I met with Younany a number of times

25    to explore various settlement scenarios but, even when agreements were reached, he never would

26    finalize any agreement.  (This has continued until as recently as last fall when we appeared to have

27    reached an agreement to resolve the claims and then Younany abruptly declined to document the

28    agreement.)

17.    When no agreement had been achieved to resolve the claims by December, 2013, I

filed a complaint in the Superior Court of California, County of Los Angeles, versus Zhasmian

Khachtourian (aka Jasmin Kachtourian), Remon Younany and Defendants' Business Harbor

Petroleum, Inc., (Case No. LC101137) for:

- Breach of Contract

- Fraud

- Common Counts

Shortly after the complaint was filed Defendants filed the instant bankruptcy.  Thereafter, I filed

this adversary action in the Bankruptcy Court challenging dischargeability under 11 U.S.C. §

523(a)(6) and Debtors' discharge under 11 U.S.C. § 727(A)(4)(a) and claiming damages arising

out of Debtors' conduct of at least $87,000 in regard to Yannalfo's claim and $183,000 in regard

to the Kavehpours' claim(s).

18.    I believe Defendants fraudulently induced the Kavehpours and Yannalfo to invest

in their Defendants' Business and/or loan them money because:

- Both the Kavehpours and Yannalfo characterized the purpose of moneys tendered to

Younany as to purchase of ownership interests in his business which was, in actuality,

Defendants' Business as Younany did not own it (Ms. Kachtourian did);

- The documents provided to the Kavehpours and, finally, to Yannalfo identified that the

Kavehpours were entering into a stock purchase agreement and Yannalfo was being offered a 25%

partnership interest, however, no real ownership or partnership interests were conveyed to the

Kavehpours or Yannalfo and, in fact, under their petroleum distribution license(s) and their

franchise agreements Defendants could not transfer interests such as were identified in the

Irrevocable Offer and Stock Purchase Agreement which I believe suggests Defendants never

intended to convey interest(s) in Defendants' Business;

- The Kavehpours and Yannalfo expressed that Defendants' Business appeared to be

profitable and was presented to them as being profitable; neither the Kavehpours nor Yannalfo

was in a position to embark on a high-risk investment (such as investing in or loaning money to a

financially unstable or insolvent company) and, indeed, by the time Yannalfo was given

4

**DECLARATION OF PLAINTIFF SATISH SHETTY**

DANA H. DOUGLAS
*Attorney At Law*

1    documentation confirming the intended partnership investment, he had learned the business was

2    not solvent and declined to make the further investment – had he been told at the outset the

3    business was not financially stable he would not have invested over $87,000 before the discovery

4    of the actual condition of Defendants' Business.

5        19.      For the reasons outlined above, I ask the Court to declare these debts non-

6    dischargeable.

7        Sworn under penalty of perjury under the laws of the United States of America this 18th

8    day of April, 2016.

9                                                    Respectfully submitted,

10

11                                                   _____

12                                                   Satish Shetty, Plaintiff

13

DATE:   April 18, 2016                               /s/ Dana M. Douglas
14                                                   _____
                                                     Attorney for Plaintiff, Satish Shetty

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Dana M. Douglas  (SBN 220053)
   Attorney at Law
2  11024 Balboa Blvd., No. 431
   Granada Hills, CA 91344
3  MAILING ADDRESS:
   4712 Admiralty Way #1001
4  Marina del Rey, CA  90292
   Telephone: 818-360-8295
5  Facsimile:  213-270-9456
   *dana@danamdouglaslaw.com*
6
   Attorney for Plaintiff
7  Satish Shetty

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             SAN FERNANDO VALLEY DIVISION

11  In re:                              )   Case No. 1:14-bk-10668-MB
                                        )
12    REMON YOUNANY,                    )
                                        )   Chapter 7
13             Debtor.                  )
                                        )
14  ------------------------------------ )
                                        )   Adversary No.  1:14-ap-01098-MB
15                                      )
      Satish Shetty,                    )
16                                      )   **DECLARATION OF WITNESS**
               Plaintiff,              )   **AZI KAVEHPOUR**
17                                      )
      v.                                )
18                                      )
                                        )   **Trial Date:**
19    Jasmin Kachtourian,               )   Date:       April 22, 2016
                                        )   Time:       10:00 am
20    and                               )   Courtroom:  303
                                        )               21041 Burbank Blvd.
21    Remon Younany,                    )               Woodland Hills, CA  91364
                                        )
22                                      )
               Defendant.              )
23                                      )
                                        )
24  ------------------------------------ )

25       Witness, AZI KAVEHPOUR, declares as follows:

26       1.      I am a witness in this matter.  I have personal knowledge of the

27  information below other than those stated on information and belief, which I believe to

28



DECLARATION OF WITNESS AZI KAVEHPOUR

1  be true, and if called upon to do so, I could and would competently testify thereto under

2  oath, in a court of law.

3      2.      This declaration is my direct testimony in support of the complaint of

4  Satish Shetty against defendants Jasmin Kachtourian ("Kachtourian") and Remon

5  Younany ("Younany") (individually "Defendant" and, jointly, "Defendants").

6      3.      I transacted business with Defendants after an associate recommended

7  that I look at Defendant's Business as a potential investment and I had a number of

8  conversations with Defendant Younany.  As a result of those conversations, I and my

9  brother, Ali Kavehpour, agreed to purchase an interest in his business.  My brother Ali

10  never met with or talked to Younany or Kachtourian, he relied on me to handle the

11  transaction(s) for both of us.  Our agreement to invest with Defendants was (were)

12  eventually documented in writings signed by both Defendants and both my brother and

13  me.

14      4.      My brother and I invested in Defendants' business which was an ARCO-

15  branded gas station with an AM/PM Minimart located at 2124 Harbor Boulevard in

16  Ventura 93001 ("Defendants' Business").

17      5.      I am a realtor and I know Satish Shetty from prior real estate

18  transactions.  While discussing unrelated, contemporaneous transactions, I happened

19  to tell Satish Shetty about my experience working at Defendants' Business and in

20  investing in Defendants' Business.  After I and Shetty discussed my experience, he

21  agreed to purchase my and my brother's claim and causes of action arising out of our

22  investment in Defendants' Business.

23      6.      After I received the recommendation to invest in Defendants' Business, I

24  went to the gas station on Harbor Boulevard to purchase gasoline and to look at the

25  station and how it works.  I met Mr. Younany at the station.  He talked to me about his

26  business and asked me if I was interested in investing in his business which was a very

27  nice-looking ARCO station in a very good location on Harbor Blvd. in Ventura.

28

DANA M. DOUGLAS
Attorney At Law

7.     I had a number of conversations with Younany early in January, 2012, to discuss the business.  I asked Younany, among other things, if there were any mortgages or other encumbrances and he specifically said Defendants' Business was "free and clear" with no liabilities; even a recent tax issue caused by an accountant's error was already resolved.  That same month I and my brother signed agreements also signed by Younany and Jasmin Kachtourian that required a number of payments from us to Younany and we paid them.  As part of the agreement to invest in Defendants' Business I began working in the station as a cashier from 2:00 pm to 12:00 midnight, and often much later than that, about four nights each week; Younany told me he wanted me to co-operate the station with him. I worked at the station nearly two years.

8.     My and my brother's agreement to purchase interests in Defendants' Business was demonstrated by an agreement called Irrevocable Offer and Stock Purchase Agreement which we executed January 28, 2012, along with Mr. Younany and Ms. Kachtourian.  I gave Mr. Shetty a copy of the Irrevocable Offer and Stock Purchase Agreement along with copies of checks totaling $183,000 that were tendered to Defendants and cashed by them.

9.     I feel I was fraudulently induced to invest our family funds in Defendants' Business and/or loan them money because:

- I tendered money to Defendants to purchase ownership interests in Defendants' Business but Defendants appear to have used the money for their own purposes as they never conveyed any stocks or any other evidence of ownership in Defendants' Business and Younany used funds I tendered as part of my investment in Defendants' Business to purchase a truck instead;

- Younany did not disclose Defendant's Business had a delinquent loan with Wilshire State Bank of over $600,000;

- The documents provided to us identified that we were entering into a stock purchase agreement and I worked at the station for nearly two years as the co-operating partner, but no real ownership or partnership interests were conveyed to us and I later

DANA M. DOUGLAS
Attorney At Law

1  learned that under their petroleum distribution license(s) and their franchise

2  agreements Defendants could not transfer such interests as we agreed to purchase in

3  the Irrevocable Offer and Stock Purchase Agreement. I believe this shows Defendants

4  never intended to convey interest(s) in Defendants' Business;

5  • I and my brother invested in Defendants' Business because Younany said it was

6  profitable and it appeared to be profitable; we were not in a position to embark on a

7  high-risk investment (such as investing in or loaning money to a financially unstable or

8  insolvent company) and, indeed, I lost both my savings and real estate that I could not

9  maintain due to my investments in Defendants' Business and the hours that I was

10  working at the station as the co-operating partner.

11  10.    Even after I had invested in Defendants' Business and was working there

12  as the co-operating partner, I never learned of the true condition of Defendants'

13  Business. When Defendants and Defendants' Business filed bankruptcies, I did not

14  receive notice of the bankruptcies. Not only did Younany not inform me of any the

15  bankruptcies despite that I was working there, but he used an incorrect address – that

16  was never my address – for my notices.

17  11.    For the reasons outlined above, I ask the Court to declare these debts

18  non-dischargeable and to reverse the standard chapter 7 discharge granted to Debtors.

19  Sworn under penalty of perjury under the laws of the United States of America

20  this 19th day of April, 2016.

21

22  _____
   Azi Kavehpour, Witness

23

24  Respectfully submitted,

   DATE:    April 19, 2016              /s/ Dana M. Douglas
25                                       Attorney for Plaintiff, Satish Shetty

26

27

28

4
DECLARATION OF WITNESS AZI KAVEHPOUR

1  | Dana M. Douglas  (SBN 220053)
    | Attorney at Law
2  | 11024 Balboa Blvd., No. 431
    | Granada Hills, CA 91344
3  | MAILING ADDRESS:
    | 4712 Admiralty Way #1001
4  | Marina del Rey, CA  90292
    | Telephone: 818-360-8295
5  | Facsimile:  213-270-9456
    | *dana@danamdouglaslaw.com*
6  |
    | Attorney for Plaintiff
7  | Satish Shetty

8  |              UNITED STATES BANKRUPTCY COURT

9  |              CENTRAL DISTRICT OF CALIFORNIA

10 |              SAN FERNANDO VALLEY DIVISION

11 | In re:                                    )   Case No. 1:14-bk-10668-MB
                                               )
12 |    REMON YOUNANY,                          )
                                               )   Chapter 7
13 |                   Debtor.                  )
                                               )
14 | ---------------------------------------------- )
                                               )   Adversary No.  1:14-ap-01098-MB
15 |                                            )
    | Satish Shetty,                           )
16 |                                            )   **DECLARATION OF WITNESS**
    |                   Plaintiff,             )   **GARY YANNALFO**
17 |                                            )
    |    v.                                    )
18 |                                            )
                                               )   **Trial Date:**
19 | Jasmin Kachtourian                        )   Date:       April 22, 2016
                                               )   Time:       10:00 am
20 | and                                       )   Courtroom:  303
                                               )               21041 Burbank Blvd.
21 | Remon Younany,                            )               Woodland Hills, CA  91364
                                               )
22 |                                            )
                   Defendant.                  )
23 |                                            )
                                               )
24 | ---------------------------------------------- )

25 |         Witness, GARY YANNALFO, declares as follows:

26 |         1.      I am a witness in this matter.  I have personal knowledge of the

27 | information below other than those stated on information and belief, which I believe to

28 |

**WITNESS DECLARATION**



1   be true, and if called upon to do so, I could and would competently testify thereto under

2   oath, in a court of law.

3       2.      This declaration is my direct testimony in support of the complaint of

4   Satish Shetty against defendants Jasmin Kachtourian ("Kachtourian") and Remon

5   Younany ("Younany") (individually "Defendant" and, jointly, "Defendants").

6       3.      I have a claim against Younany.  I transacted business with Defendant

7   Younany; my transactions were documented in writings signed by Defendant Younany

8   only.

9       4.      I became acquainted with Younany when I would stop in at the AMPM

10  ARCO station at 2124 E. Harbor Blvd. in Ventura ("Defendants' Business") to purchase

11  gasoline or merchandise in the convenience store.

12      5.      I would often talk to a cashier in the convenience store whose name I

13  believe is Hector.  Hector asked me if I was looking for investment opportunities.  When

14  I said yes, he introduced me to Younany who asked me the same thing.  When I again

15  said yes, he invited me to invest in <u>his</u> business which he said was solvent and

16  suggested that I could become a partner in the Business.

17      6.      I met with Younany and his banker, Debra Dana Beckett, at the nearby

18  branch of Chase Bank who confirmed that the Business made regular deposits at that

19  bank.  It appeared that the Business was solvent.  Ms. Beckett notarized the first

20  promissory note that Younany prepared and signed when I tendered the first payment

21  to him of $42,500 on January 18, 2013.  Not every promissory note was notarized, but

22  the first one, and also a later one, was notarized by Ms. Beckett.

23      7.      I tendered an additional amount to Younany of $15,000 that was

24  documented in a promissory note dated and signed February 4, 2013; and $15,000 was

25  on February 10, 2013; the $15,000 was re-stated on February 23, 2013; on March 8,

26  2013; on March 22, 2013; and on April 6, 2013.  On April 24, 2013, Younany signed

27  and had notarized a promissory note dated April 19, 2013 summarizing that he had

28  borrowed $65,000, and on that same date he borrowed an additional $10,000; on April

DANA M. DOUGLAS
Attorney At Law

1  29, 2013 I tendered $10,000; which was re-stated on or about May 5, 2013 and on May

2  19, 2013.  On May 17, 2013 I tendered $20,000 and on June 2nd (or 12th) and on July

3  7, 2013 Younany signed promissory notes summarizing that he had received $30,000

4  from me.  The June 2nd (or 12th) and July 7th promissory notes pertained to the monies

5  tendered from April 19-May 19 only, not the previous $65,000 I had tendered to

6  Younany.

7         8.     On June 7, 2013, Younany finally offered an agreement that I would be a

8  partner, with a 25% interest in the business, but it would require me to pay additional

9  sums of money.  I did not sign it.

10         9.     After I began tendering money to Younany he asked me to help him in his

11  back office with papers that would come in that he had difficulty reading.  I learned how

12  to use his computer.  From what I saw in the computer I realized that although I was

13  tendering money to become a partner in what I believed was Younany's profitable, or at

14  least solvent, Business, this was not the case.  I learned that the Business had serious

15  financial problems and was losing its franchise with ARCO.  I did not invest any more

16  money with Younany after that.

17       10.    Younany had been paying interest on the promissory notes but when I

18  did not sign the agreement to invest more money and become a partner, he stopped

19  paying interest on the notes.

20       11.    I asked Younany to pay me the full amount of the notes.  He did not

21  respond in any way.  Based upon what I had learned about the solvency of the

22  Business, I did not believe he would pay me.

23       12.    In late 2013 or early 2014 I met Azi Kavehpour who also had invested in

24  Defendants' Business.  She said she had found someone who might be able to help us

25  recover at least some of our investment.  Ms. Kavehpour introduced me to Mr. Shetty

26  and I transferred my claim to him to try to recover it.

27       Sworn under penalty of perjury under the laws of the United States of America

28  this 18th day of April, 2016.

3

**DECLARATION OF WITNESS GARY YANNALFO**

DANA M. DOUGLAS
Attorney At Law

1

2                                                          _____
                                                            Gary Yannalfo, Witness
3

4

          Respectfully submitted,
5
     DATE:    April 18, 2016                                  /s/ Dana M. Douglas
6                                                            Attorney for Plaintiff, Satish Shetty

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF WITNESS GARY YANNALFO**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11024 Balboa Blvd., No. 431, Granada Hills, CA 91344.

A true and correct copy of the foregoing document entitled (*specify*):  PLAINTIFF'S TRIAL BRIEF   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 4/19/2016 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Dana M Douglas    dmddouglas@hotmail.com
- Amy L Goldman (TR)    gabriela.garcia@lewisbrisbois.com, agoldman@ecf.epiqsystems.com
- Brian Nomi    briannomi@yahoo.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On (*date*)  ### , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 4/19/2016 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Martin Barash                      Jasmin Kachtourian; Remon Younany via Brian
US Bankruptcy Court                     Nomi, Esq. @ briannomi@yahoo.com
21041 Burbank Blvd., St. 342
Woodland Hills, CA  91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

4/19/2016            DM Douglas                      /s/ DM Douglas
*Date*               *Printed Name*                  *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**